**In re Application to Restore Firearms Rights of Michael L. KEYES.**

**Appeal of Michael L. Keyes, Appellant.**

Superior Court of Pennsylvania.

Argued April 16, 2013.

Filed Dec. 24, 2013.

Reargument Denied Feb. 24, 2014.

energy; a person would be hard pressed to locate a current pipeline were it not for the occasional roadside marker. In fact, the PUC currently inspects the existing pipeline infrastructure that serves consumers—that portion alone consists of over 46,000 miles. Despite the fear mongering about pipelines, practical experience shows the contrary, and there is no evidence suggesting these interfere with our environment in any significant way.

Absent a pipeline, alternate means of transport will be needed—the tractor-trailer. The number of trucks needed to transport the gas that could flow through a pipeline may be fewer than the number of angels that can dance on the head of a pin, but not by much. Will the environment, which underlies the constitutional argument, be better or worse when fleets of trucks expel their exhausts into our air and spill fuel and oil that leaks into our water? Beyond the environmental consequences, the physical toll of such an armada on the repair of our state roads and local highways can hardly be overstated.

We can speculate about which transport will be better or worse, but we have held no hearings, taken no evidence. My speculations are just that, but they are the same type of speculation that girds the lead opinion's broad language and cross-appellants' parade of horribles. Likewise, it is but speculation

that leads to the unfortunate characterization of the legislature's motives. Whether pro or con, the various opinions of the members of this Court and the divergent opinions of thousands of local officials about the best means of accomplishing the balance between resources and environment are simply not a proper part of our constitutional analysis.

3. As an example of its tendency to broaden our function, the lead opinion states the "Commonwealth is named trustee and, notably, duties and powers attendant to the trust are not vested exclusively in any single branch of Pennsylvania's government. The plain intent of the provision is to permit the checks and balances of government to operate in their usual fashion for the benefit of the people" for accomplishing the trust purposes. Opinion Announcing the Judgment of the Court, at 956. It is *not* notable that no branch is given exclusive administrative power, in this or any similar concern—the judicial role is not administrative at all. We are a check or balance to be sure, but we have no authority to "administer" things "for the benefit of the people." We benefit the people by assuring constitutional compliance, not by second-guessing the administrative decisions made by the branch of government manifestly charged with that responsibility.

Joshua G. Prince, Bechtelsville, for appellant.

Carlton M. Smith, Harrisburg, for PA State Police, appellee.

BEFORE: FORD ELLIOTT, P.J.E., WECHT and COLVILLE,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Appellant appeals the order denying his petition to expunge his record of involuntary mental health commitments pursuant to sections 7302 and 7303 of the Mental Health Procedures Act ("MHPA"), 50 P.S. §§ 7302, 7303, as to allow appellant to possess a firearm. Finding no error below, we affirm.

Appellant is a Pennsylvania State Police Trooper. During the summer of 2006, appellant was in a depressed state and made multiple attempts to commit suicide by the ingestion of drugs. Subsequently, appellant was involuntarily committed to a mental health facility, first under section 7302 of the MHPA, and then under the more restrictive section 7303. As a consequence of these commitments, appellant is barred from possessing a firearm under 18 Pa. C.S.A. § 6105:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms.**

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

**(c) Other persons.—**In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

(4) A person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act. This paragraph shall not apply to any proceeding under section 302 of the Mental Health Procedures Act unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable.

18 Pa.C.S.A. § 6105(a)(1) and (c)(4).

On December 3, 2008, appellant filed an "Application for Restoration of Firearms Rights" pursuant to section 6105(f)(1):

**(f) Other exemptions and proceedings.—**

(1) Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.

18 Pa.C.S.A. § 6105(f)(1).

On July 10, 2009, the court entered an order restoring appellant's rights to possess a firearm. However, the court did not expunge appellant's involuntary com-

* Retired Senior Judge assigned to the Superior Court.

mitment record, ostensibly because such relief was not requested.[1] Because these commitments remained on appellant's record, although he could again possess a firearm under Pennsylvania law, he was still barred from possessing a firearm under the federal Gun Control Act:

**§ 922. Unlawful acts**

**(g)** It shall be unlawful for any person—

> **(4)** who has been adjudicated as a mental defective or who has been committed to a mental institution; to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922(g)(4).

Ironically, under another provision of the Gun Control Act, appellant is permitted to possess a firearm while he is on-duty as a State Trooper:

**§ 925. Exceptions: Relief from disabilities**

**(a)(1)** The provisions of this chapter, except for sections 922(d)(9) and 922(g)(9) and provisions relating to firearms subject to the prohibitions of section 922(p), shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

18 U.S.C.A. § 925(a)(1). Thus, the Gun Control Act prohibits appellant from possessing a firearm only when he is off-duty.

On September 18, 2009, appellant filed a "Motion to Vacate Mental Health Commitment Pursuant to 18 Pa.C.S.A. § 6105(f)." On September 28, 2009, the court entered a rule to show cause, returnable in 21 days, upon the Pennsylvania State Police as to why appellant's motion should not be granted. The Pennsylvania State Police filed their response on October 22, 2009, three days late of the October 19, 2009 deadline. For unknown reasons, the court took no further action as to this motion, nor did appellant file any pleading prompting it to act.

Three years later, with the assistance of new counsel, appellant filed a "Motion to Expunge Mental Health Commitment Pursuant to Order Granting Relief." Therein, appellant argued that the court should expunge his mental health records pursuant to its powers under 18 Pa.C.S.A. § 6105(f)(1). The court again issued a rule to show cause, and Pennsylvania State Police filed a timely response. On June 25, 2012, the trial court entered an order denying appellant's motion based upon this court's holding in *In re Kevin Jacobs,* 15 A.3d 509 (Pa.Super.2011), and the fact that appellant had been committed under section 7303:

> Appellant's present petition, and appeal, are moot because even if he is entitled to expunction under § 7302, expunction cannot go forward because appellant was also involuntarily committed under § 7303. 18 Pa.C.S.A. § 6111.1(g) provides no opportunity to obtain expunction of mental health records pursuant to a commitment under § 7303. This undoubtedly reflects the fact that commitment under § 7303 indicates a

---

**1.** Moreover, as our analysis, *infra,* will show, the court did not have the authority to expunge these records under 18 Pa.C.S.A. § 6105(f)(1).

more serious mental problem, and the fact that commitment under § 7302 only requires a doctor's determination, while commitment under § 7303 imposes major due process requirements.

Appellant had the opportunity in 2004 to appeal his commitment under § 7303, and he chose not to do so. The lower court had no jurisdiction under 18 Pa. C.S.A. § 6111.1(g) to review appellant's commitment under § 7303. That statute only imbues the lower court with jurisdiction to review commitments under § 7302.

*Id.* at 510.

Essentially, then, the court held that because appellant was committed under section 7303, that record could not be expunged and that fact rendered it moot whether his commitment under section 7302 could be expunged. The court also apparently rejected, without directly stating so, appellant's argument that expunction was available pursuant to the court's powers under 18 Pa.C.S.A. § 6105(f)(1). Appellant now brings this timely appeal.

Appellant raises the following issues on appeal:

1. Whether a conflict of interest exists between the State Police and an employee of the State Police in a Petition to Expunge Mental Health Commitment sufficient to require the dismissal of the State Police as an interested party and the substitution of the Attorney General[?]

2. Whether the trial court committed an abuse of discretion and/or error of law by failing to strike the State Police's response to the Petition to Expunge Mental Health Commitment because the response was untimely and the State Police cannot demonstrate "just cause" for failing to comply with the Pennsylvania Rules of Civil Procedure[?]

3. Whether the trial court committed an abuse of discretion and/or error of law for failing to grant Appellant an expungement of his 7302 and 7303 commitment pursuant to 18 Pa. C.S. § 6111.1(g)(8) and § 6105(f) where a significant procedural defect existed during the 7302 commitment and the Court of Common Pleas previously ordered the restoration of his firearms[?]

4. Whether the statutory scheme of 18 U.S.C. § 922(g)(8) is unconstitutional pursuant to the Second Amendment because the prohibition on the "mentally ill" is not narrowly tailored to a serve a compelling state interest when the classification of the "mentally ill" includes individuals who are in fact not mentally ill and therefore protected by the Second Amendment[?]

5. Whether the statutory scheme of 18 U.S.C. § 922(g)(8) is unconstitutional pursuant to the Equal Protection Clause of the Fifth Amendment because the disparate treatment between individuals benefitting the government and all other similarly situated individuals with respect to the right to bear arms is not rationally related to some legitimate governmental purpose[?]

6. Whether the statutory scheme of 18 U.S.C. § 922(g)(8) is unconstitutional pursuant to the Due Process Clause of the Fifth Amendment because individuals prohibited on the basis of at some point being deemed mentally ill are denied an opportunity to apply for relief from their prohibition on the right to bear arms[?]

Appellant's brief at 4–5.

 We will begin our review with appellant's third issue because our resolution

of that issue effectively renders appellant's first two issues moot. In that third issue, appellant argues that the trial court erred in failing to grant expunction of the record of his involuntary commitments pursuant to 50 P.S. §§ 7302 and 7303. Appellant contends that the court had the authority to do so under 18 Pa.C.S.A. § 6105(f)(1). Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion. *Commonwealth v. A.M.R.*, 887 A.2d 1266, 1268 (Pa.Super.2005).

 The central premise to appellant's third argument is that 18 Pa.C.S.A. § 6105(f)(1) imbued the lower court with authority to expunge his record of involuntary commitments under the MHPA. Simply stated, subsection 6105(f)(1) conveys no such authority. Subsection 6105(f)(1) is intended solely for the restoration of the right to possess firearms, not for the expunction of a record of involuntary commitment under the MHPA. This court has previously correctly interpreted this section similarly, albeit in *dicta:*

Grable captioned his petition, filed on December 20, 2005, as one for expungement; however, a petition for relief from a firearm disability under 18 Pa. Cons. Stat.Ann. § 6105 is not an expungement proceeding. *Pennsylvania State Police v. Paulshock*, 575 Pa. 378, 385–386, 836 A.2d 110, 114–115 (2003)("[T]he only relief that can be given pursuant to a petition filed under Section 6105(d) is from the firearm disability that is imposed pursuant to Section 6105(a)."). Orders for expungement are statutorily proscribed pursuant to the Criminal History Record Information Act, 18 Pa. Cons.Stat.Ann. § 9122(b), and only con-

viction records may be expunged where: 1) the subject of the information reaches the age of seventy and has been free from arrest or prosecution for ten years; or 2) where the individual has been dead for three years. *See Commonwealth v. Charnik*, 921 A.2d 1214, 1217 (Pa.Super.2007). Because Grable's disability was not based on a criminal conviction, 18 Pa. Cons.Stat.Ann. § 9122 is not applicable in this case.

However, an individual with a disability under 18 Pa. Cons.Stat.Ann. § 6105(c)(4) may petition the trial court for expungement of records of involuntary treatment pursuant to 18 Pa. Cons. Stat.Ann. § 6111.1(g). *See, e.g. In re R.F.*, 914 A.2d 907, 916 (Pa.Super.2006), *appeal denied*, 593 Pa. 741, 929 A.2d 1162 (2007). Although Grable requested that his mental health records be expunged in his petition filed on December 20, 2005, he did not request relief under § 6111.1(g), no evidence was admitted in relation to the issues relevant to expungement, the trial court did not discuss expungement in its decision, and the trial court did not grant expungement in its order of February 14, 2006. *In re Expungements*, 938 A.2d 1075, 1078 n. 2 (Pa.Super.2007),[2] *appeal denied, In re Grable*, 597 Pa. 717, 951 A.2d 1164 (2008).

Subsequently, in *Kevin Jacobs*, this court held that expunction of an involuntary commitment record was available under 18 Pa.C.S.A. § 6111.1(g) as to commitments pursuant to section 7302, but not as to commitments pursuant to section 7303.

Section 6111.1(g) reads as follows:

(g) **Review by court.—**

 (1) Upon receipt of a copy of the order of a court of competent jurisdic-

---

**2.** The matter at issue in *Expungements* was not whether expunction relief was available under section 6105(f)(1), but whether the Pennsylvania State Police had standing to op-

pose the appellant's petition for restoration of his right to possess firearms. This court found that such standing existed.

tion which vacates a final order or an involuntary certification issued by a mental health review officer, the Pennsylvania State Police shall expunge all records of the involuntary treatment received under subsection (f).

(2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60–day period set forth under section 6105(a)(2).

(3) The Pennsylvania State Police shall expunge all records of an involuntary commitment of an individual who is discharged from a mental health facility based upon the initial review by the physician occurring within two hours of arrival under section 302(b) of the Mental Health Procedures Act and the physician's determination that no severe mental disability existed pursuant to section 302(b) of the Mental Health Procedures Act. The physician shall provide signed confirmation of the determination of the lack of severe mental disability following the initial examination under section 302(b) of the Mental Health Procedures Act to the Pennsylvania State Police.

18 Pa.C.S.A. § 6111.1(g).

Appellant argues that the broad language of section 6105(f)(1), to the effect that, "the court may grant such relief as it deems appropriate," includes the authority to expunge records. Appellant argues that if the Legislature had intended not to include this authority, it would have incorporated language explicitly excluding the authority. We disagree.

First, section 6105(f)(1) of the Uniform Firearms Act makes no mention of expunction of records; rather, the statute is clearly directed as a vehicle for the restoration of the right to possess firearms by those whom have previously been involuntarily committed under the MHPA. When the Legislature chose to provide for the expunction of mental health records under the Uniform Firearms Act, it specifically did so in section 6111.1(g) of the Act.

█ Second, if we interpreted section 6105(f)(1) as conveying a broad power to expunge mental health records, it would render section 6111.1(g) mere surplusage because the power to expunge mental health records thereunder would already be provided for by section 6105(f)(1). "Basic rules of statutory construction set forth that statutes shall be construed, if possible, to give effect to all its provisions and that the legislature did not intend any statutory language to exist as mere surplusage." *Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa.Super.2013), quoting *Commonwealth v. Velez*, 51 A.3d 260, 265 (Pa.Super.2012) (citations omitted) and citing 1 Pa.C.S.A. § 1925(a) and (b). Appellant's proposed interpretation of section 6105(f) of the Uniform Firearms Act would improperly render another section of that Act as mere surplusage.

The cases cited by appellant also do not support his position. Appellant cites *J.C.B. v. Pennsylvania State Police*, 35 A.3d 792 (Pa.Super.2012), *appeal denied*, 616 Pa. 653, 49 A.3d 444 (2012), *cert. de-*

*nied,* —— U.S. ——, 133 S.Ct. 1808, 185 L.Ed.2d 827 (2013). Therein, appellant argues, the court considered whether the trial court committed an abuse of discretion in denying an application for expunction. Appellant finds it significant that this court did not simply affirm on the basis that section 6105(f)(1) provided no authority for expunction. We wholly reject appellant's disingenuous argument. In *J.C.B.,* this court did not rule that section 6105(f)(1) provided no authority for expunction because that question was never raised. The applicant in *J.C.B.* filed a petition to restore his firearm rights pursuant to section 6105(f)(1), but the petition to expunge his record was brought pursuant to section 6111.1(g)(2). The *J.C.B.* court, therefore, was not presented with a question as to whether section 6105(f)(1) provided authority for expunction.

 Appellant also improperly cites *In re C.N.,* 32 A.3d 261 (Pa.Super.2011), a non-binding, unpublished memorandum decision of this court.[3] In *In re C.N.,* this court affirmed the trial court on the basis of the trial court's opinion. In that opinion, the court noted that the Petition to Expunge Record did not specify under what authority expunction was sought. The court went on to examine whether there was sufficient evidence to expunge appellant's mental health records under first section 6111.1(g)(2) and then under section 6105(f)(1). The court denied expunction under either section. We find that the trial court in *In re C.N.* improperly raised section 6105(f)(1) as authority for expunction. Although a panel of this court affirmed on the basis of the trial court's opinion, we note that the non-binding memorandum decision twice characterized

the Petition to Expunge Record below as having been brought pursuant solely to section 6111.1(g)(2). *In re C.N.,* No. 857 WDA 2010, unpublished memorandum at 1–3, 32 A.3d 261 (Pa.Super. filed July 7, 2011). Clearly, this court did not regard section 6105(f)(1) as providing authority for expunction.

In sum, we find that section 6105(f)(1) does not provide authority for expunging mental health commitment records. The only authority for doing so under the Uniform Firearms Act is located under section 6111.1(g). Our interpretation of these sections is the only way that both can be given full meaning without rendering either section superfluous.

 More importantly, we are aware of no authority, statutory or decisional, that provides for the expunction of a mental health commitment record where commitment was obtained pursuant to 50 P.S. § 7303. Because appellant was also committed under this section, he will not be able to expunge this record and he will continue to be prohibited from possessing firearms while off-duty pursuant to 18 U.S.C.A. § 922(g)(4).

As a result, appellant's first, second, and part of his third issues are rendered moot. Even if the Pennsylvania State Police were not properly a party to this case because that entity employs appellant, he suffered no prejudice because there was still no way for appellant to remove the section 7303 impediment to possessing a firearm. Likewise, even if the court improperly considered the Pennsylvania State Police's untimely response to the initial application, appellant suffered no prejudice because there was still no way for appellant to

**3.** Under the Internal Operating Procedures of this court, an unpublished memorandum decision may be relied upon or cited only under extremely limited circumstances. *See* Internal Operating Procedures of the Superior Court of Pennsylvania, § 65.37. The permitted circumstances do not obtain instantly.

remove the section 7303 impediment to possessing a firearm. Finally, even if the trial court erred in failing to grant expunction of appellant's commitment record under section 7302, appellant suffered no prejudice because there was still no way for appellant to remove the section 7303 impediment to possessing a firearm. Therefore, we will not address these matters, and we will move forward and review appellant's constitutional issues.

Appellant first argues that 18 U.S.C.A. § 922(g)(4) unconstitutionally violates his rights under the Second Amendment. The Third Circuit Court of Appeals recently identified a two-pronged analysis for such claims as identified by the United States Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008):

> As we read *Heller*, it suggests a two-pronged approach to Second Amendment challenges. First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

*U.S. v. Marzzarella*, 614 F.3d 85, 89 (3rd Cir.2010) (citation and footnote omitted), cert. denied, *Marzzarella v. U.S.*, — U.S. ——, 131 S.Ct. 958, 178 L.Ed.2d 790 (2011).

*Marzzarella* went on to state in *dicta* that laws prohibiting the mentally ill from possessing firearms fail to pass the first prong because the Second Amendment was not intended to protect such conduct:

> Moreover, the [*Heller*] Court identified several other valid limitations on the right similarly derived from historical prohibitions. [*Heller*], at 2816–17.

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* The Court explained that this list of "presumptively lawful regulatory measures" was merely exemplary and not exhaustive. *Id.* at 2817 n. 26.

We recognize the phrase "presumptively lawful" could have different meanings under newly enunciated Second Amendment doctrine. On the one hand, this language could be read to suggest the identified restrictions are presumptively lawful because they regulate conduct outside the scope of the Second Amendment. On the other hand, it may suggest the restrictions are presumptively lawful because they pass muster under any standard of scrutiny. Both readings are reasonable interpretations, but we think the better reading, based on the text and the structure of *Heller*, is the former—in other words, that these longstanding limitations are exceptions to the right to bear arms. Immediately following the above-quoted passage, the Court discussed "another important limitation" on the Second Amendment—restrictions on the types of weapons individuals may possess. *Heller*, 128 S.Ct. at 2817. The Court made clear that restrictions on the possession of dangerous and unusual weapons are not constitutionally suspect because these weapons are outside the ambit of the amendment. *Id.* at 2815–16 ("[T]he Second Amendment does not

protect those weapons not typically possessed by law-abiding citizens for lawful purposes...."). By equating the list of presumptively lawful regulations with restrictions on dangerous and unusual weapons, we believe the Court intended to treat them equivalently—as exceptions to the Second Amendment guarantee.

This reading is also consistent with the historical approach *Heller* used to define the scope of the right. If the Second Amendment codified a pre-existing right to bear arms, *id.* at 2797, it codified the pre-ratification understanding of that right, *id.* at 2821 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them...."). Therefore, if the right to bear arms as commonly understood at the time of ratification did not bar restrictions on possession by felons or the mentally ill, it follows that by constitutionalizing this understanding, the Second Amendment carved out these limitations from the right. Moreover, the specific language chosen by the Court refers to "prohibitions" on the possession of firearms by felons and the mentally ill. *Id.* at 2816–17. The endorsement of prohibitions as opposed to regulations, whose validity would turn on the presence or absence of certain circumstances, suggests felons and the mentally ill are disqualified from exercising their Second Amendment rights.

*Marzzarella*, 614 F.3d at 91–92 (footnotes omitted).[4]

 While appellant derides this analysis as "intellectual laziness,"[5] we think the *Marzzarella* court has reached the correct conclusion that the possession of firearms by the mentally ill does not fall within the conduct that the Second Amendment was intended to protect.

 Moreover, even if we assume *arguendo* that section 922(g)(4) is within the area protected by the Second Amendment and the first prong of *Marzzarella* is satisfied, section 922(g)(4) does not run afoul of the second, scrutiny prong. Where a statute does not severely limit the possession of firearms, it should be evaluated under intermediate scrutiny rather than strict scrutiny. *Marzzarella*, 614 F.3d at 96–97. Section 922(g)(4) does not severely limit the possession of firearms because the class of persons affected is extremely small.

 In order to withstand intermediate scrutiny, the statute at issue must be reasonably adapted to achieve an important government interest. *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d 338, 348 (5th Cir.2013), petition for *certiorari* filed (September 24, 2013). We find that the government has an important interest in keeping firearms out of the hands of those who have ever been adjudicated mentally defective or who have ever been committed to a mental institution (to reflect the language of section 922(g)(4)). The dangers inherent in the possession of firearms by the mentally ill are manifest. This is even more vital in cases such as appellant, who was involuntarily committed and thus failed to recognize and act upon his own illness.

In apparent anticipation of this conclusion, appellant argues that the exclusion of

---

4. This analysis constitutes *dicta* because *Marzzarella* was resolving the constitutionality of a different section of the Gun Control Act, section 922(k), which prohibits the possession of firearms with altered serial numbers. However, we will adopt that analysis as our rationale here.

5. Appellant's brief at 38.

the mentally ill from the protection of the Second Amendment should not apply to him because he is no longer mentally ill. To this we respond that a present clean bill of mental health is no guarantee that a relapse is not possible. Given the extreme potential harm attendant to the possession of deadly weapons by the mentally ill, and the risk of relapse, we see an important government interest in controlling the availability of firearms for those who have ever been adjudicated mentally defective or have ever been committed to a mental institution but are now deemed to be cured. Although appellant has been pronounced cured of his depression, we see a legitimate government interest in still limiting the availability of firearms to him.

 In his next argument, appellant argues that the statutory scheme represented by 18 U.S.C.A. §§ 922(g)(4) and 925(a)(1), whereby he is permitted to possess firearms while on-duty as a Pennsylvania State Trooper, but not while off-duty, violates the equal protection component of the Due Process Clause of the Fifth Amendment. While appellant exhorts us to adopt some level of scrutiny greater than a rational basis review, he has provided no legal argument that greater scrutiny is due and proceeds to analyze this issue under a rational basis review. Furthermore, rational basis review appears to be appropriate:

> We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental

rights nor proceed along suspect lines." For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."

*Heller v. Doe by Doe,* 509 U.S. 312, 319–320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (citations omitted). Since the classes at issue neither involve fundamental rights nor proceed along suspect lines, it would appear that rational basis review is appropriate.[6]

We find that the exception provided under section 925(a)(1) for those suffering the disability of section 922(g)(4) serves a legitimate governmental purpose and has a rational basis. Section 925(a)(1) provides a safety net for those persons whose jobs with government agencies require them to have the ability to possess a firearm and yet would otherwise be unable to do so because of section 922(g)(4). We find the exception to be rational because presumably the individuals possessing firearms under section 925(a)(1) do so under the supervision of their superiors and fellow employees at the government agency at issue.

In appellant's case, section 925(a)(1) permits him to continue in his employment as

---

6. We have already observed that the possession of firearms by the mentally ill is outside the protection of the Second Amendment; hence, the classes at issue do not involve a fundamental right.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

a Pennsylvania State Trooper when he otherwise could not because of the disability to carry firearms under section 922(g)(4). Appellant may possess firearms while on the job but does so under the supervision of his superior officers and the observation of his fellow officers. There is no such supervision while appellant is off-duty. Were appellant to again fall into a depressive state with suicidal ideation, it would be much more likely to be discovered while he is on-duty and his superiors could then restrict his access to State Police firearms. Thus, we find a legitimate governmental purpose for section 925(a)(1), and that it has a rational basis.

▉▉▉▉▉ In his final argument, appellant complains that sections 922(g)(4) and 925(a)(1) violate the Due Process Clause of the Fifth Amendment because they fail to provide those adjudicated mentally defective or committed to a mental institution a genuine opportunity to petition for relief from the firearms prohibition. *See Galioto v. Department of Treasury, Bureau of Alcohol, Tobacco and Firearms,* 602 F.Supp. 682 (D.N.J.1985), rendered moot by legislative action as recognized by *U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco and Firearms v. Galioto,* 477 U.S. 556, 106 S.Ct. 2683, 91 L.Ed.2d 459 (1986). Appellant concedes that section 925(c) of the Gun Control Act has since been amended to permit those suffering from a disability under section 922(g)(4) to petition for relief:

> (c) A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his

satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Attorney General may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice. A licensed importer, licensed manufacturer, licensed dealer, or licensed collector conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section. Whenever the Attorney General grants relief to any person pursuant to this section he shall promptly publish in the Federal Register notice of such action, together with the reasons therefor.

18 U.S.C.A. § 925(c).

Appellant argues that this provision is an empty promise because Congress has never funded the application program and because the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") will not permit privately funded applications. Unfortunately for appellant, as he must also concede, the United States Supreme Court has ruled that a denial of an application for relief from firearms disability by the ATF is a prerequisite to judicial review:

> Relying on § 925(c), respondent applied to ATF for relief from his firearms

disabilities. ATF returned the application unprocessed, explaining that its annual appropriations law forbade it from expending any funds to investigate or act upon applications such as respondent's.

Respondent then filed suit in the United States District Court for the Eastern District of Texas. Relying on the judicial review provision in § 925(c), respondent asked the District Court to conduct its own inquiry into his fitness to possess a gun, and to issue a judicial order granting relief from his firearms disabilities. Respondent attached various affidavits from persons attesting to his fitness to possess firearms. After conducting a hearing, the court entered judgment granting respondent the requested relief. The Court of Appeals for the Fifth Circuit affirmed, concluding that congressional refusal to provide funding to ATF for reviewing applications such as respondent's "is not the requisite direct and definite suspension or repeal of the subject rights." [*Bean v. Bureau of Alcohol, Tobacco and Firearms* ] 253 F.3d [234] at 239 [ (5th Cir. 2001) ]. The Fifth Circuit then proceeded to hold that the District Court had jurisdiction to review ATF's (in)action. We granted certiorari.

. . . .

The procedure that § 925(c) lays out for those seeking relief also leads us to conclude that an actual adverse action on the application by ATF is a prerequisite for judicial review. Section 925(c) requires an applicant, as a first step, to petition the Secretary and establish to the Secretary's satisfaction that the applicant is eligible for relief. The Secretary, in his discretion, may grant or deny the request based on the broad considerations outlined above. Only then, if the Secretary denies relief, may an applicant seek review in a district court.

*U.S. v. Bean,* 537 U.S. 71, 73, 76–77, 123 S.Ct. 584, 154 L.Ed.2d 483 (2002).[7]

Appellant asks us to declare section 925(c) unconstitutional because he is effectively being denied the ability to purge his disability to possess a firearm under section 922(g)(4). However, section 925(c) clearly passes constitutional muster because it does provide for a procedure to remove the disability; rather, it is the inaction of Congress in failing to appropriate funds to support the application process that bars appellant's ability to remove the disability. Nonetheless, the federal courts have ruled that "congressional refusal to provide funding to ATF for reviewing applications such as respondent's 'is not the requisite direct and definite suspension or repeal of the subject rights.'" *Id.* at 73, 123 S.Ct. 584. Therefore, we are also precluded from holding that the lack of funding is unconstitutional because it has been determined that that does not constitute a suspension or repeal of the right to remove the disability. Section 925(c) is not unconstitutional. There is no merit here.

Accordingly, having found no merit in any of appellant's issues on appeal, the order entered below will be affirmed.

Order affirmed.

WECHT, J. concurs in the result.

---

7. We note that since *U.S. v. Bean* was decided, Congress has amended section 925(c), directing applicants for relief from firearm disabilities to petition the Attorney General, rather than the Secretary of the Treasury. We are unaware whether Congress has provided the Department of Justice with funding for review of such applications.