J-A17014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: T.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.R. | : | No. 1037 EDA 2013 |

Appeal from the Order Entered February 28, 2013
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 3960-11

BEFORE:  GANTMAN, P.J., PANELLA, J., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.:　　　　　**FILED NOVEMBER 06, 2014**

Appellant, T.R., appeals from the order entered in the Delaware County Court of Common Pleas, which denied his petition to expunge his mental health commitments under the Mental Health Procedures Act ("MHPA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Appellant is a licensed Pennsylvania attorney with a Ph.D. in plant molecular biology.  Since 2006, Appellant has received mental health treatment for bipolar disorder with depression.  Due to his mental illness, Appellant has not maintained employment since approximately 2007.  Appellant also receives Social Security disability benefits.

On May 24, 2011, Appellant's treating psychiatrist, Dr. Susan Mitchell, recommended that Appellant immediately admit himself at Crozer Chester

---

[1] 50 P.S. §§ 7101-7503.

Medical Center ("Crozer") for a psychiatric evaluation because Dr. Mitchell believed Appellant was at risk of suicide. The following day, Appellant presented himself for an emergency psychiatric evaluation at Crozer, where he reported having severe depression and "vague suicidal thoughts with a plan." (*See* Hearing Exhibit D-3 at 1; R.R. at 57A.) After an emergency evaluation, which deemed Appellant severely mentally ill and in need of emergency treatment, Dr. Jacob McCormick, M.D., the attending physician, signed an application to admit Appellant under 50 P.S. § 7302 for up to 120 hours of involuntary emergency examination and treatment. Appellant signed the Section 7302 form to acknowledge that he had been notified of his rights. Appellant received a psychiatric evaluation, an IV for dehydration, and medication including Lithium. At approximately 6:00 p.m. on May 25, 2011, Dr. Syed Ali, M.D., met with Appellant and confirmed that he had been involuntarily committed under Section 7302.

Appellant met with Deanna Chiddick, a social worker, and Dr. Rivera on May 26, 2011. Ms. Chiddick explained to Appellant that he would meet with a psychiatrist for Delaware County, who would conduct a psychiatric examination. Dr. Rivera told Appellant there would be an involuntary emergency treatment proceeding ("Section 7303 proceeding") the following day to determine whether to extend Appellant's involuntary emergency treatment under 50 P.S. § 7303. Prior to the Section 7303 proceeding, Dr. Theodore J. Barry, M.D., the psychiatrist for Delaware County, conducted an

independent psychiatric examination of Appellant on May 27, 2011. Dr. Barry reviewed Appellant's medical records from May 25, 2011, including Dr. Ali's report describing Appellant as "agitative, manic, paranoid, [and] depressed," refused to take any medication, and verbalized "suicidal thoughts with a vague plan." (*See* Hearing Exhibit C at 7; R.R. at 49A.) Dr. Barry discussed with Appellant Dr. Ali's recommendation that Appellant continue treatment at Crozer, with which Appellant agreed. Dr. Barry then told Appellant Dr. Barry would inform the Mental Health Review Officer at the Section 7303 proceeding of Appellant's agreement to the recommended treatment, so Appellant would not be put through a formal court hearing.

During Dr. Barry's examination, Appellant's court-appointed attorney for the Section 7303 proceeding, was present outside the open door to Dr. Barry's office. Counsel testified he typically listens while Dr. Barry meets with patients in preparation for Section 7303 proceedings. If the patient agrees with Dr. Barry to continue the involuntary treatment, counsel testified he usually does not speak to the patient or interfere with his decision.

Appellant's Section 7303 proceeding was held on May 27, 2011, before a Mental Health Review Officer. Appellant did not attend the proceeding. Based on Appellant's acquiescence to continue treatment, the Mental Health Review Officer ordered Appellant to receive up to twenty days of extended involuntary treatment under Section 7303. Appellant was subsequently

released from Crozer on May 31, 2011. Appellant has had no hospital admissions due to his mental illness since that time.

On April 26, 2012, Appellant filed a petition to expunge his mental health commitments, pursuant to 50 P.S. §§ 7109(b) and 7303(g) of the MHPA.[2] The trial court conducted an evidentiary hearing on December 3, 2012. On February 28, 2013, the court issued findings of fact and conclusions of law, and denied Appellant's petition. Appellant timely filed a notice of appeal on March 27, 2013. The court ordered Appellant on April 3, 2013, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on April 24, 2013.

Appellant raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY DENYING [APPELLANT'S] PETITION FOR EXPUNGEMENT OF HIS INVOLUNTARY MENTAL HEALTH COMMITMENTS.

> WHETHER THE INITIAL INVOLUNTARY COMMITMENT OF [APPELLANT] AT CROZER CHESTER HOSPITAL PURSUANT TO THE MENTAL HEALTH PROCEDURES ACT, 50 P.S. § 7302, WAS INAPPROPRIATE AND UNLAWFUL BECAUSE EVIDENCE DEMONSTRATES THAT [APPELLANT] DID NOT "[ACT] IN SUCH A MANNER AS TO EVIDENCE THAT HE WOULD BE UNABLE WITHOUT CARE, SUPERVISION AND THE CONTINUED ASSISTANCE OF OTHERS, TO SATISFY HIS NEED FOR NOURISHMENT, PERSONAL OR MEDICAL CARE, SHELTER, OR SELF-PROTECTION AND SAFETY, AND THAT THERE [WAS] REASONABLE PROBABILITY THAT DEATH, SERIOUS BODILY INJURY OR SERIOUS PHYSICAL DEBILITATION WOULD ENSUE WITHIN 30 DAYS UNLESS ADEQUATE TREATMENT [WAS] AFFORDED."

---

[2] 50 P.S. §§ 7109(b) and 7303(g) contain identical language.

WHETHER THE INITIAL INVOLUNTARY COMMITMENT OF [APPELLANT] AT CROZER CHESTER HOSPITAL PURSUANT TO THE MENTAL HEALTH PROCEDURES ACT, 50 P.S. § 7302, WAS INAPPROPRIATE AND UNLAWFUL BECAUSE EVIDENCE DEMONSTRATES THAT [APPELLANT] DID NOT INTEND TO TAKE HIS OWN LIFE NOR DID HE TAKE ANY ACT IN FURTHERANCE OF ANY PLAN TO HARM HIMSELF.

WHETHER THE EXTENDED INVOLUNTARY COMMITMENT OF [APPELLANT] AT CROZER CHESTER HOSPITAL UNDER THE MENTAL HEALTH PROCEDURES ACT, 50 P.S. § 7303, WAS INAPPROPRIATE AND UNLAWFUL BECAUSE [APPELLANT] DID NOT KNOWINGLY AGREE TO CONTINUED INPATIENT TREATMENT OR KNOWINGLY WAIVE HIS RIGHT TO AN INFORMAL HEARING.

WHETHER THE EXTENDED INVOLUNTARY COMMITMENT OF [APPELLANT] AT CROZER CHESTER HOSPITAL PURSUANT TO THE MENTAL HEALTH PROCEDURES ACT, 50 P.S. § 7303, WAS INAPPROPRIATE AND UNLAWFUL BECAUSE [APPELLANT] WAS DEPRIVED OF DUE PROCESS OF LAW DURING HIS ["§ 303"] COMMITMENT PROCEEDINGS IN THAT [APPELLANT] WAS DENIED ADEQUATE REPRESENTATION OF COUNSEL BY HIS COURT-APPOINTED ATTORNEY.

WHETHER THE TRIAL COURT ERRED IN FINDING THAT [APPELLANT] COULD NOT HAVE SUFFERED ANY STIGMA FROM HIS ILLEGAL COMMITMENTS BECAUSE HE HAS APPLIED FOR AND RECEIVED SOCIAL SECURITY DISABILITY BENEFITS, IN THAT THE COURT'S CONCLUSION DENIES THE DISTINCTION BETWEEN A BENEFIT THAT APPELLANT IS ENTITLED TO BY LAW SECURED BY HIM VOLUNTARILY AND AN ILLEGAL COMMITMENT AND IS CONTRARY TO PENNSYLVANIA LAW.

(Appellant's Brief at 3-4).

"Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." **In re Keyes**, 83 A.3d 1016, 1022 (Pa.Super. 2013) (citing **Commonwealth v. A.M.R.**, 887

A.2d 1266, 1268 (Pa.Super. 2005)).

In his first five issues, Appellant argues his involuntary commitment under Sections 7302 and 7303 of the MHPA was inappropriate and unlawful. Appellant contends his initial commitment under Section 7302 was unlawful because there was no evidence Appellant was unable to care for himself, posed a clear and present danger to himself or others, or refused to eat or take medication. Appellant claims he presented at Crozer as cooperative, alert, and well groomed, and at the time of commitment he lived in a stable home with his wife and two adult daughters. Appellant also alleges he was not a clear and present danger to himself under the statute because, in the thirty days prior to his involuntary commitment, Appellant had not intended to take his own life or committed any act to further a plan to harm himself. Appellant asserts the staff at Crozer had no reason to commit him under a provision of the MHPA regarding a risk of suicide.

Appellant also argues his extended involuntary commitment under Section 7303 was unlawful because he was deprived of his due process rights during his Section 7303 proceeding. Appellant states he did not knowingly or intentionally waive his right to a formal hearing under Section 7303, where he was unaware he had a right to a hearing and access to counsel. Appellant contends no one adequately explained the process when he agreed to comply with Dr. Ali's recommendation for continued treatment. Appellant alleges he mistakenly believed that waiving his right to a formal

hearing and continuing treatment meant he would be released. Appellant also claims he was denied adequate representation of counsel because he did not know counsel had been appointed to represent Appellant. Appellant maintains counsel's conduct amounted to ineffective assistance because counsel did not meet with Appellant or represent Appellant's interests at the Section 7303 proceeding, and counsel failed to ensure Appellant understood that he was waiving his right to a formal hearing. Appellant concludes this Court must grant Appellant's expungement petition. We disagree.

Sections 7301, 7302, and 7303 of the MHPA deal with involuntary emergency examination and treatment of individuals: Section 7301 provides in relevant part:

> **§ 7301. Persons who may be subject to involuntary emergency examination and treatment**
>
> **(a) Persons Subject.**—Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.
>
> **(b) Determination of Clear and Present Danger.—**
>
> \* \* \*
>
> (2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:
>
>> (i) the person has acted in such manner as to evidence that he would be unable, without care,

supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide[.] …

50 P.S. § 7301(a), (b)(2)(i)-(ii). Section 7302 provides:

**§ 7302. Involuntary emergency examination and treatment authorized by a physician—not to exceed one hundred twenty hours**

**(a) Application for Examination.**—Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

(1) Warrant for Emergency Examination.—Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.

(2) Emergency Examination Without a Warrant.— Upon personal observation of the conduct of a

person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

**(b) Examination and Determination of Need for Emergency Treatment.**—A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301 and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. In no event shall a person be accepted for involuntary emergency treatment if a previous application was granted for such treatment and the new application is not based on behavior occurring after the earlier application.

**(c) Notification of Rights at Emergency Examination.**—Upon arrival at the facility, the person shall be informed of the reasons for emergency examination and of his right to communicate immediately with others. He shall be given reasonable use of the telephone. He shall be requested to furnish the names of parties whom he may want notified of his custody and kept informed of his status. The county administrator or the director of the facility shall:

(1) give notice to such parties of the whereabouts and status of the person, how and when he may be contacted and visited, and how they may obtain information concerning him while he is in inpatient treatment; and

(2) take reasonable steps to assure that while the person is detained, the health and safety needs of any of his dependents are met, and that his personal property and the premises he occupies are secure.

**(d) Duration of Emergency Examination and Treatment.**—A person who is in treatment pursuant to this section shall be discharged whenever it is determined that he no longer is in need of treatment and in any event within 120 hours, unless within such period:

\* \* \*

(2) a certification for extended involuntary emergency treatment is filed pursuant to section 303 of this act.

50 P.S. § 7302(a)-(c), (d)(2) (internal footnotes omitted). Furthermore,

Section 7303 provides in relevant part:

**§ 7303. Extended involuntary emergency treatment certified by a judge or mental health review officer— not to exceed twenty days**

**(a) Persons Subject to Extended Involuntary Emergency Treatment.**—Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.

**(b) Appointment of Counsel and Scheduling of Informal Hearing.**—Upon receiving such application, the court of common pleas shall appoint an attorney who shall represent the person unless it shall appear that the person can afford, and desires to have, private representation. Within 24 hours after the application is filed, an informal

hearing shall be conducted by a judge or by a mental health review officer and, if practicable, shall be held at the facility.

**(c) Informal Conference on Extended Emergency Treatment Application.**—(1) At the commencement of the informal conference, the judge or the mental health review officer shall inform the person of the nature of the proceedings. Information relevant to whether the person is severely mentally disabled and in need of treatment shall be reviewed, including the reasons that continued involuntary treatment is considered necessary. Such explanation shall be made by a physician who examined the person and shall be in terms understandable to a layman. The judge or mental health review officer may review any relevant information even if it would be normally excluded under rules of evidence if he believes that such information is reliable. The person or his representative shall have the right to ask questions of the physician and of any other witnesses and to present any relevant information. At the conclusion of the review, if the judge or the review officer finds that the person is severely mentally disabled and in need of continued involuntary treatment, he shall so certify. Otherwise, he shall direct that the facility director or his designee discharge the person.

\* \* \*

**(g) Petition to Common Pleas Court.**—In all cases in which the hearing was conducted by a mental health review officer, **a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel.** The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.

- 11 -

**(h) Duration of Extended Involuntary Emergency Treatment.**—Whenever a person is no longer severely mentally disabled or in need of immediate treatment and, in any event, within 20 days after the filing of the certification, he shall be discharged….

50 P.S. § 7303(a)-(c)(1),(g)-(h) (internal footnote omitted) (emphasis added).

Involuntary commitment under Section 7302 is proper "where there are reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment." *In re Jacobs*, 15 A.3d 509, 510 (Pa.Super. 2011) (citing *In re Hancock*, 719 A.2d 1053, 1055 (Pa.Super. 1998)). "[I]t is not sufficient to find only that the person is in need of mental health services. It must also be established that there is a reasonable probability of death, serious injury or serious physical debilitation to order commitment." *In re R.F.*, 914 A.2d 907, 913-14 (Pa.Super. 2006), *appeal denied*, 593 Pa. 741, 929 A.2d 1162 (2007) (citing *In re T.T.*, 875 A.2d 1123 (Pa.Super. 2005)). "[A] suicide attempt occurs when a person clearly articulates or demonstrates an intention to commit suicide and has committed an overt action in furtherance of the intended action." *In re R.F., supra* at 913 (citing 55 Pa. Code § 5100.84(g)). "[C]ommitment under § 7303 indicates a more serious mental problem[;]…commitment under § 7302 only requires a doctor's determination, while commitment under § 7303 imposes major due process requirements." *Jacobs, supra* at 511.

"[E]xpungement of civil commitment records (be they generated in a hospital or court context) are required if they originated as a result of an illegal proceeding subsequently declared null and void[.]" ***In re R.F., supra*** at 909 (citation and internal quotation marks omitted). Nevertheless, this Court has recently stated: "[W]e are aware of no authority, statutory or decisional, that provides for the expunction of a mental health commitment record where commitment was obtained pursuant to 50 P.S. § 7303." ***Keyes, supra*** at 1024.

Instantly, Appellant presented himself to Crozer per the recommendation of his treating psychiatrist, Dr. Mitchell. Appellant reported severe depression, "vague suicidal thoughts with a plan," "people are after him," and "nothing will help me." (***See*** Hearing Exhibit D-3 at 1; R.R. at 57A; Hearing Exhibit B at 5; R.R. at 40A.) Dr. McCormick performed an emergency evaluation and determined Appellant was severely mentally disabled and in need of immediate emergency treatment. Dr. McCormick consequently signed a Section 7302 application for involuntary commitment, which stated Appellant "was a clear and present danger to himself" because, within the past thirty days, he had "acted in such manner as to evidence that [he] would be unable, without care, supervision and the continued assistance of others, to satisfy [his] need for nourishment, personal or medical care, shelter, or self-protection and safety" and there was a "reasonable probability that death, serious bodily injury or serious physical

debilitation would ensue…unless adequate treatment were afforded[.]" (**See** Hearing Exhibit C at 2; R.R. at 44A.)  Thus, there were reasonable grounds to believe Appellant was severely mentally disabled, together with a reasonable probability of death or serious bodily injury.  **See Jacobs, supra**; **R.F., supra**.  Appellant signed the Section 7302 application to acknowledge his admission rights had been explained to him.  Accordingly, Appellant's Section 7302 commitment was lawful and appropriate; it did not arise from an illegal proceeding.  **See R.F., supra**.

Furthermore, there is no legal authority to expunge Appellant's commitment under Section 7303.  **See Jacobs, supra**; **Keyes, supra** (holding there is no way for appellant to remove record of Section 7303 commitment).  Moreover, Appellant had the opportunity in 2011 to appeal his Section 7303 commitment.  **See** 50 P.S. § 7303(g).  Nevertheless, Appellant failed to do so.

The trial court summarized its disposition of Appellant's first five issues as follows:

> Separate and apart from [Appellant's] significant suicidal ideations, he was first admitted to Crozer because he presented as a patient unable to satisfy his most basic needs for "nourishment, personal or medical care, shelter or self-protection and safety," and for these reasons, serious bodily injury or death were a "reasonable probability."  [Appellant's] commitment under [Section 7302 of the MHPA] was therefore appropriate and lawful.
>
> Based on the evidence of record, this [c]ourt determined that [Appellant] knowingly agreed to the continued inpatient treatment at [Crozer] for stabilization of mood,

behavior, suicidal thoughts and stabilization of medications. As [Appellant] agreed to further inpatient treatment and therefore obviated the need for a hearing, his argument regarding ineffective counsel was moot. [Appellant's] commitment under [Section 7303 of the MHPA] was also appropriate and lawful. As the commitments were appropriate and lawful, the Petition for Expungement was appropriately denied.

(Trial Court Opinion, filed May 22, 2013, at 11-12). We accept the court's reasoning. Thus, the court properly denied Appellant's petition to expunge his commitments under the MHPA. **See Keyes, supra**. Accordingly, Appellant's first five issues merit no relief.

In his final issue, Appellant argues he has suffered shame and stigma from his involuntary mental health commitments. Appellant alleges the court improperly interpreted Pennsylvania law when it said that individuals who suffer from mental illness and apply for Social Security disability cannot suffer further trauma to their reputation due to an illegal involuntary commitment. Appellant maintains in very general terms that stigma is presumed with involuntary commitments because records of those commitments pose an ongoing threat to an individual's reputation. Appellant concludes this Court must grant his expungement petition on this ground. We cannot agree.

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." **Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa.Super. 2014) (quoting **Estate of Haiko v. McGinley**, 799 A.2d 155, 161

(Pa.Super. 2002)) (internal quotation marks omitted). *See* Pa.R.A.P. 2119(a)-(b). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived." *Coulter, supra*.

Here, Appellant's final issue is arguably waived for failure to develop his claim regarding the "additional" stigma and shame Appellant suffered due to his involuntary commitments. Appellant's argument does not cite any relevant authority to support his allegation that records of an involuntary commitment may be expunged based on vague allegations of stigma and shame. Therefore, Appellant's final issue is waived.[3] *See id.*; Pa.R.A.P. 2119(a)-(b).

Moreover, even if Appellant's final issue had been preserved, Appellant would not be entitled to relief because his commitment under Section 7303 cannot be expunged. *See Keyes, supra*; *Jacobs, supra*. Accordingly, we affirm the court's order denying Appellant's petition for expungement of his mental health commitments.

Order affirmed.

---

[3] Appellant's final issue fundamentally turns on Appellant's allegations of the "illegality" of his commitments, which we have already determined, on this record, were legal.

J-A17014-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014