J-A27035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.H., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.E.O., | : | |
| | : | |
| Appellant | : | No. 56 WDA 2014 |

Appeal from the Order entered on December 9, 2013
in the Court of Common Pleas of Allegheny County,
Orphans' Court Division, No. CC 1658 of 1991

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:        **FILED DECEMBER 05, 2014**

J.E.O.[1] appeals from the Order denying his "Petition for Expungement and Restoration of Civil Rights" (hereinafter "Expungement Petition"). We affirm.

The Orphans' Court set forth the relevant facts underlying this appeal as follows:

> On May 12, 1991, following a disturbance at his home, [J.E.O.] was involuntarily committed for treatment at Braddock Medical Center, pursuant to 50 P.S. § 7302 [of the Mental Health Procedures Act (hereinafter "MHPA" or "the Act"), governing involuntary emergency examination and treatment by a physician]. The physicians at the facility determined, upon examination of [J.E.O.], that he was in need of extended treatment for underlying [psychological] issues, and they submitted an application for extended treatment [hereinafter referred to as "Application for Involuntary Commitment"] under 50 P.S. § 7303. A hearing was held on May 14, 1991, at which testimony was heard by a Mental Health Review Officer [hereinafter "Hearing Officer"], who dismissed the [Application

---

[1] In the proceedings before the Orphans' Court, J.E.O.'s name was incorrectly listed as J.H.

for Involuntary Commitment], based on what he perceived to be a "lack of dangerousness." The Allegheny County Mental Health/Mental Retardation Program filed a [P]etition for review of the Hearing Officer's decision. On May 16, 1991, after a *de novo* review [hearing (hereinafter referred to as "the review hearing")], Judge J. Warren Watson ["Judge Watson"] vacated the [Hearing Officer's dismissal of the Application for Involuntary Commitment,] and entered an [O]rder [hereinafter referred to as "the Commitment Order"] committing [J.E.O.] to St. Francis Hospital for a period not to exceed 20 days.

According to testimony from the [review] hearing, and the [A]pplication for [I]nvoluntary [Commitment], [J.E.O.] had threatened to kill his wife and son, and had proclaimed that he had guns in the house available for his use. [J.E.O. was intoxicated, having consumed alcohol earlier in the day.] After officers arrived at the home, [J.E.O.] made threatening remarks and refused to retreat when instructed by the officers. In his testimony, [J.E.O.] admitted that when the officers exposed their police batons to him, he told the officers that he knew how to use a stick from his time spent in the military and that the officers should "put that thing back or you're going to get hurt." N.T. Hearing, 05/14/91, p. 27.

Orphans' Court Opinion, 4/17/14, at 1-2 (unnumbered).

No further action occurred in the case until J.E.O. filed the Expungement Petition in June 2013. The Orphans' Court held a hearing on the Expungement Petition on October 29, 2013. At the hearing, J.E.O. presented the testimony of Robert M. Wettstein, M.D. ("Dr. Wettstein"), a psychiatrist who had conducted an evaluation of J.E.O., reviewed his case file, and spoken with some of his treating physicians. **See** N.T., 10/29/13, at 47-59. Dr. Wettstein stated that J.E.O. has been diagnosed with post traumatic stress disorder ("PTSD"), major depression,[2] obsessive-compulsive

---

[2] Dr. Wettstein stated that J.E.O.'s PTSD and depression were in "partial remission." N.T., 10/29/13, at 59-60.

- 2 -

tendencies, and has chronic pain, which he has treated with opiates. *Id.* at 50-51, 59-60. Dr. Wettstein expressed his medical opinion that there was insufficient medical evidence in the Application for Involuntary Commitment to support a finding that J.E.O. was severely mentally disabled so as to warrant involuntary commitment. *Id.* at 52. Dr. Wettstein opined that, regarding the incident at J.E.O.'s home that prompted the filing of the Application for Involuntary Commitment, "alcohol was the primary problem at that time. Of course, you cannot [involuntarily commit] someone because they're intoxicated with alcohol." *Id.* Dr. Wettstein further stated that there was insufficient medical evidence to support a finding that J.E.O. presented a clear and present danger to himself or others based upon a mental illness. *Id.* at 54; *see also* Dr. Wettstein Letter, 8/15/13. Finally, Dr. Wettstein opined that J.E.O. would not present a danger to himself or to the public if he were to possess a firearm. *See* N.T., 10/29/13, at 57-58; *see also* Dr. Wettstein Letter, 7/9/12, at 9. In this regard, Dr. Wettstein emphasized that (a) "[J.E.O.] has no history of any violent behavior other than these threats that he apparently made at [his] home that day[;]" (b) "[h]e's … been well controlled with regard to his PTSD and his depression[;]" and (c) "[t]here's no significant suicidal issues." N.T., 10/29/13, at 57, 58.

On December 9, 2013, the Orphans' Court entered an Order denying the Expungement Petition. J.E.O. timely filed a Notice of Appeal, and complied with the Orphans' Court's order to submit a Concise Statement of Errors Complained of on Appeal, in accordance with Pa.R.A.P. 1925(b).

On appeal, J.E.O. presents the following issues for our review:

I. Whether the [Orphans' C]ourt erred in denying [J.E.O.'s] [] Expungement [Petition]…, despite the fact that the [Orphans' C]ourt's [Commitment] Order … was the product of an illegal proceeding unsupported by clear and convincing evidence[?]

II. Whether the [Orphans' C]ourt erred in denying [J.E.O.'s] alternative request that his right to own and possess firearms be restored, pursuant to 18 Pa.C.S.A. § 6105(f)(1), despite unrebutted medical evidence having been presented that [J.E.O.] would not present a danger to himself or the public if he were to regain possession of his firearms or have a carry permit[?]

Brief for Appellant at 4 (capitalization omitted).

In his first issue, J.E.O. argues that the Orphans' Court erred by denying his Expungement Petition because (1) there was insufficient evidence to support the Commitment Order; and (2) the Orphans' Court deprived J.E.O. of due process and committed "[n]umerous procedural errors" in entering the Commitment Order. **See id.** at 10-18.

Our standard of review in cases concerning a motion to expunge is whether the Orphans' Court abused its discretion. **In re Keyes**, 83 A.3d 1016, 1022 (Pa. Super. 2013).

We will first address J.E.O.'s sufficiency challenge, wherein he argues as follows:

[A]lthough [J.E.O.] allegedly made threatening statements (which [J.E.O.] denies)[,] nowhere in the [] [A]pplication [for Involuntary Commitment] did either the officer who [filed the initial application to involuntarily commit J.E.O.,] or the physician who [subsequently] examined [J.E.O.,] even suggest that [J.E.O. had] committed "acts in furtherance of a threat to commit harm." 50 P.S. § 7301. … [Dr.] Wettstein …

- 4 -

unequivocally [stated] that insufficient evidence was cited in the [Involuntary Commitment P]etition and adduced at the [review] hearing "to have concluded that [J.E.O.] presented a clear and present danger to himself or others based upon a mental illness." [Dr. Wettstein Letter, 8/15/13]. Doctor Wettstein's [opinion] in this regard was not effectively rebutted. When the testimony taken at the … [review] hearing is … considered in light of D[r.] Wettstein's medical expert testimony, it is abundantly clear that insufficient evidence was produced at the [review] hearing to meet the appropriately high standard of "clear and convincing" [evidence] necessary to support the involuntary commitment pursuant to [section] [7]303 [of the MHPA]. [**See**] **In re: Hancock**, 719 A.2d 1053[, 1055] (Pa. Super. 1998) ([observing that] the degree of proof necessary to commit a person for mental evaluation under 50 P.S. § 7303 is clear and convincing evidence). [Section] 6111.1[(g) of the Uniform Firearms Act ("Firearms Act")[3]] therefore mandates the expungement of the records of this erroneous and illegal commitment.

Brief for Appellant at 16-17 (footnote added; emphasis omitted).[4]

Regarding J.E.O.'s contention that the Commitment Order was improper because of the lack of evidence that he took any action in furtherance of his threats, the Orphans' Court addressed this claim as follows:

---

[3] Section 6111.1(g) provides, *inter alia*, as follows:

A person who is involuntarily committed pursuant to section [7]302 of the [MHPA] may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. …

18 Pa.C.S.A. § 6111.1(g)(2).

[4] J.E.O. presents several sub-issues within his first issue, which we will address separately.

[J.E.O.] significantly misconstrues the requirements of the MHPA by [arguing] that in order to be committed for involuntary treatment[,] there **must** have been an act done in furtherance of his threats. This is not a necessity under the Act. The provision from which [J.E.O.] derives the "in furtherance of" language is 50 P.S. § 7301, which governs who will be considered "severely mentally disabled," and thus made subject to involuntary commitment proceedings. The statute provides:

> A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

*Id.* § 7301(a). The statute further directs that a person is considered to pose "a clear and present danger of harm to others" if "within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated." *Id.* § 7301(b). Finally, the provision **permits** that "a clear and present danger of harm to others **may** be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm." *Id.* (emphasis added).

A plain reading of the statutory language unveils [the] legislature's intent to allow other means by which a person can be deemed a "clear and present danger" within the meaning of the Act. *See Commonwealth v. Helms*, 506 A.2d 1384, 1388 (Pa. Super. 1986) ([stating that] "[] the Act does not require 'threats of harm' and commission of 'acts in furtherance of the threat to commit harm['] as a condition precedent for finding 'clear and present danger.'").

Orphans' Court Opinion, 4/17/14, at 6-7 (unnumbered; emphasis in original). Our review confirms that the Orphans' Court's analysis is supported by the law and the record, and we affirm based on the Court's analysis concerning this component of J.E.O.'s sufficiency challenge. *See id.*

The Orphans' Court addressed J.E.O.'s sufficiency challenge, as it pertains to the testimony of Dr. Wettstein, as follows:

> [W]hile there was indeed medical testimony [from Dr. Wettstein] claiming that the evidence was insufficient to support the involuntary commitment[], it is the prerogative of the judge, as fact-finder, to believe all, part, or none of the testimony, and to determine the credibility of the witnesses. *See Zuk v. Zuk*, 55 A.3d 102, 106 (Pa. Super. 2012). [Dr. Wettstein] testified that the [section] 7302 commitment was improper because it was the product of [J.E.O.'s] intoxication rather than mental illness. N.T. Hearing, 10/29/13, p. 52-[5]3. However, [Dr. Wettstein] overlooked the fact that the examining doctors at the time of the commitment found there to be underlying mental issues necessitating involuntary treatment. Moreover, [Dr. Wettstein] stated that [J.E.O.] still exhibits signs of major depressive disorder that is merely in partial remission, in addition to post-traumatic stress disorder, in partial remission, along with obsessive[-]compulsive personality traits. *Id.* at 59-60. These disorders, coupled with the physical pain experienced by [J.E.O.], and the tapering of his prescribed opiates, give rise to serious concerns about [his] ability to responsibly possess and handle a firearm.

Orphans' Court Opinion, 4/17/14, at 5-6 (unnumbered). We agree with the Orphans' Court's sound rationale, which is supported by the record, and affirm on this basis concerning this aspect of J.E.O.'s sufficiency challenge. *See id.*

Also in connection with his first issue, J.E.O. asserts that the Orphans' Court deprived him of due process by committing "[n]umerous procedural errors[,]" such as failing to give him an opportunity to be heard at the review hearing, prior to issuing the Commitment Order. *See* Brief for Appellant at 9, 12-16.

The Commonwealth argues that J.E.O. has failed to preserve his due process claim, as any challenge to the May 1991 Commitment Order should have been presented within thirty days of that Order,[5] pursuant to Pa.R.A.P. 903. **See** Brief for the Commonwealth at 10; **see also** Pa.R.A.P. 903(a) (providing that a notice of appeal must be filed within thirty days after the entry of the order from which the appeal is taken). We agree and must find J.E.O.'s claim in this regard to be waived. **See PNC Bank, N.A. v. Unknown Heirs**, 929 A.2d 219, 226 (Pa. Super. 2007) (noting that the thirty-day period in Rule 903(a) must be construed strictly, and this Court has no jurisdiction to excuse a failure to file a timely notice of appeal).

Nevertheless, even if J.E.O. had properly preserved his due process challenge, we would determine that it lacks merit. J.E.O. summarizes his claim as follows:

> [A]t the conclusion of the hearing on the [Application for Involuntary Commitment] …, the Hearing Officer found that [J.E.O.] did not present a clear and present danger to himself or others and [recommended] that the [Application for Involuntary Commitment] be dismissed. In response, the Mental Health/Mental Retardation Program filed a Petition for review of the [H]earing Officer's decision. Thereafter, without [J.E.O.'s] knowledge, without the opportunity for him to attend and be heard[,] and without making a record, the [Orphans'] Court conducted a review of the taped hearing and vacated and set aside the certification of the Hearing Officer and Ordered that [J.E.O.] be committed to St. Francis Hospital for a period not to exceed 20 days. …

---

[5] We observe that an order entered after a *de novo* hearing to review the determination of a mental health review officer concerning an application for involuntary commitment is a final, appealable order. **See, e.g., In Re Estate of S.G.L.**, 885 A.2d 73, 74 (Pa. Super. 2005); **see also In re T.J.**, 739 A.2d 478, 481-83 (Pa. 1999).

…

> When [J.E.O.'s] absence from the [review hearing] is coupled with the facts that only a review of the taped hearing was performed, without a true hearing before the [Orphans'] Court and without a record being made, it is clear that [J.E.O.] was denied due process of law. [*See In Re Estate of*] ***S.G.L.,*** ***supra*** [(where the appellant raised a due process challenge concerning the Orphans' Court's failure to conduct a proper *de novo* hearing (*i.e.*, to review the decision of the mental health review officer regarding a petition for involuntary commitment), holding that the Orphans' Court violated the requirement of section 7303(g) of the MHPA to conduct at least a minimal hearing because (1) the appellant's counsel was not given the opportunity to make argument and offer supplemental evidence; (2) the appellant was not present; and (3) no record was made)].

Brief for Appellant at 12, 15 (emphasis and citations to record omitted).

In its Pa.R.A.P. 1925(a) Opinion, the Orphans' Court rejected J.E.O.'s

due process challenge, stating as follows:

> Under Section 7303(g) of the MHPA, "[a] hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and *such evidence as the court may receive or require*." 50 P.S. § 7303(g) (emphasis added). At the time of [J.E.O.'s] review hearing, this was the only applicable law regarding what evidence was to be received by the court at a [section] 7303 review hearing. [J.E.O.] rel[ies] on ***In re*** ***Estate of S.G.L.***[*, supra*], to proffer that the review hearing did not meet the minimum requirements to clear the threshold of constitutionality. … However, ***S.G.L.*** was decided nearly 15 years after [J.E.O.'s] review hearing[;] therefore, it could not have been controlling at that time, and cannot be used to retroactively nullify the proceeding.

Orphans' Court Opinion, 4/17/14, at 3-4 (unnumbered; emphasis in

original); ***see also id.*** at 4 (stating that "[the Orphans' C]ourt's review of

the record establishe[s] that the procedure employed by Judge Watson [at

the review hearing] was proper, and there was ample evidence to justify the results of the review hearing."). Even if J.E.O. had not waived his due process challenge to the Commitment Order, we would affirm with regard to this claim based on the Orphans' Court's above reasoning. *See id.* at 3-4.

Next, J.E.O. argues that the Orphans' Court erred by denying his request to have his right to possess firearms restored in light of Dr. Wettstein's testimony that J.E.O. did not present a danger to himself or others, and that "there is no significant risk for [J.E.O.] to possess a firearm…." Brief for Appellant at 19 (quoting N.T., 10/29/13, at 179).

The Orphans' Court addressed this claim in its Opinion as follows:

The Superior Court's recent decision in [*In re*] *Keyes*[*, supra*,] is instructive on this issue. In *Keyes*, the trial court entered an order, pursuant to 18 Pa.C.S.A. § 6105(f)(1) [of the Firearms Act], restoring the right to possess a firearm to a state trooper who had been committed under Sections 7302 and 7303 of the MHPA. The [trial] court did not expunge the records of involuntary commitment, because such relief was not requested. *Keyes*, 83 A.3d at 1019-20. As a result of the remaining commitment records, the state trooper was still barred from possessing a firearm when not acting in his capacity as a state trooper, under the federal Gun Control Act, 18 U.S.C.A. §§ 922(g)(4), 925(a)(1). *Keyes*, 83 A.3d at 1020. The state trooper filed a "Motion to Vacate Mental Health Commitment Pursuant to 18 Pa.C.S.A. § 6105(f)," in an attempt to regain his right to possess a firearm when off duty; the trial court denied the motion. On appeal, the Superior Court affirmed, finding that the [trial] court retained no such authority for expunction under Section 6105(f).

The Superior Court additionally noted that any possible error resulting from the trial court's denial of expunction would render no prejudice to the appellant, as there is no vehicle for removal of a Section 7303 impediment to possession of a firearm. *Keyes*, 83 A.3d at 1025. As was the case in *Keyes*, [J.E.O.] "will not be able to expunge [the section 7303] record

- 10 -

and he will continue to be prohibited from possessing firearms … pursuant to 18 U.S.C.A. § 922(g)(4)," in addition to being barred from possession under Pennsylvania law. *Id.* at 1024.

> Finally, simply stated:
>
> [g]iven the extreme potential harm attendant to the possession of deadly weapons by the mentally ill, and the risk of relapse, [there is] an important government interest in controlling the availability of firearms for those who have ever been adjudicated mentally defective or have ever been committed to a mental institution but are now deemed to be cured.
>
> *Id.* at 1027. Therefore, regardless of [Dr. Wettstein's] proclamation that [J.E.O.] is in "partial remission" for his depression and PTSD, and based on the foregoing, there is "a legitimate government interest in still limiting the availability of firearms to him," *id.*, and [the Orphans'] Court properly denied expunction of his commitment records and restoration of his right to possess firearms.

Orphans' Court Opinion, 4/17/14, at 7-8 (unnumbered). The Orphans' Court's analysis is supported by the law, and we decline to disturb its discretionary determination that it would be inappropriate to permit J.E.O. to possess firearms.

Based upon the foregoing, we discern no abuse of discretion or error of law by the Orphans' Court in denying J.E.O.'s Expungement Petition. Accordingly, we affirm the December 9, 2013 Order.

Order affirmed.

Ford Elliott, P.J.E., joins the memorandum.

Shogan, J., concurs in the result.

Judgment Entered.

- 11 -

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2014